T. BROAD ET AL. V. THE CITY OF PARIS.

(Case No. 5265.)

1. CITY TREASURER—SCHOOL FUND—BOND—ARTICLES IN CHAPTER 3, TITLE 78, REVISED STATUTES, CONSTRUED—A construction of arts. 3725-3732 and 3791, R. S., leads unavoidably to the conclusion that it was intended that the safe-keeping and disbursement of the school fund in cities having charge of the public schools should be secured by special bond. The sureties on the treasurer's general bond cannot be made liable for a defalcation in the special fund. (Authorities cited.)

2. SUIT ON BOND—OFFICIAL REPORTS—PRIMA FACIE EVIDENCE—In a suit against the sureties of a defaulting officer, the reports of the officer are *prima facie*, and not conclusive, evidence against his sureties.

APPEAL from Lamar. Tried below before the Hon. R. R. Gaines.

This was a suit instituted by the city of Paris, a municipal corporation, against T. Broad, E. Reuss, Joe Ballinger, T. H. Freese and P. H. Allen. The second amended original petition, which constituted plaintiff's pleading on the trial of the case, was filed October 1, 1884, and alleged that about April 4, 1882, J. E. Roberts was elected treasurer of plaintiff, at a regular election, and that about April 12, 1882, he executed his bond as such treasurer to plaintiff for the sum of $2,000, with defendants as his securities, conditioned that if J. E. Roberts should well and truly perform all the duties imposed upon him by law, and such other acts and duties as the city council might require of him as such treasurer, during the term for which he was elected, and until his successor was elected and qualified, the obligation was to be void, otherwise to remain in full force and effect. That the bond was approved April 12, 1882, and Roberts entered upon the duties of the office, received all the funds belonging to plaintiff up to August 20, 1883, when he resigned the office. That during the time Roberts was treasurer, he embezzled and appropriated to his own use the sum of $2,757.28 of plaintiff's funds, held by him as such treasurer; also alleged a breach of his bond, demand for the funds, death of J. E. Roberts before suit, and that his

estate was insolvent, and without administration.    That Charles Berry, in September, was elected and qualified as the successor of J. E. Roberts; that he made demand of defendants for the funds.    Among other defences, defendants set up that if any defalcation occurred during the term of office for which the bond was given, such defalcation was out of the school fund, for which the defendants were not liable; but if not wholly out of the school fund, then it was out of all the funds in the aggregate and should be pro rated accordingly.

The case was tried by the court October 29, 1884, and judgment rendered for plaintiff (appellee) for $747.06 and all costs.    Both sides appealed.

*V. W. Hale* and *Joe Ballinger*, for appellants, cited :   Hetten *v.* Lane, 43 Tex., 279; Van Sickel *v.* Buffalo Co., 13 Neb., 103; Keith *v.* Fenelow School Sec., Am. and Eng. Cor. Cases, 397; Board of Supervision *v.* Clark, *Id.*, 405.

*Maxey. Lightfoot & Denton*, for appellee, on liability of the sureties, cited :   R. S., arts. 365, 397; Hetten *v.* Lane, 43 Tex., 279; Tinsley *v.* Rusk Co., 42 Tex., 41; Brandt on Suretyship, sec. 473; State *v.* Hathorn, 36 Miss., 491; State *v.* Bradshaw, 10 Iredell's Law, (N. C.) 229.

On the reports of the treasurer as evidence, they cited :   R. S., art. 365; Cowley *v.* the People, 95 Ill., 279; Chicago *v.* Gage, 95 Ill., 593.

ROBERTSON, ASSOCIATE JUSTICE.—The bond in suit is conditioned as prescribed by law for the security of the general revenues of the city.    Article 365, R. S.    Its terms are broad enough to cover the treasurer's defalcation as custodian of the school fund.    It is claimed, however, that its scope is limited by the statute, which authorizes the city to assume control of the free schools.    The law conferring this authority is contained in chapter 3 of title 78, of the Revised Statutes.    It is there provided that the treasurers of cities having the management of the schools shall have the same powers and perform the same duties as are herein prescribed for county treasurers, so far as the same are applicable.    Article 3791.

A sub-division of the same chapter, (articles 3725 to 3732, inclusive,) is entitled "duties of the county treasurer pertaining to the school fund."    Instead of repeating so much of this sub-division as could be applied to city treasurers, these articles. as far as applicable, are referred to as defining the powers and duties of city treasurers.    The only one of these articles prescribing a duty. *eo nomine*, is 3728, in this language:   "Within twenty days after the receipt of his certifi-

cate of election, it shall be the duty of the county treasurer to execute a bond, with two or more good and sufficient sureties, for the faithful performance of his duties under this chapter.'' The next article prescribes the conditions and the means of fixing the amount of the bond. There can be no difficulty in applying these directions to the city treasurer. The bond required is in addition to the general official bond, and it is the special security required for the custody and disbursement of the special fund entrusted to the treasurer by this chapter. It is contended that giving this bond is not a duty within the meaning of the word. as used in article 3791. The usual scope of the term would probably not embrace this act; but in this law, giving the bond is prescribed under the head of duties etc., and is prescribed as a duty. These provisions, in effect, define the word as used by the legislature in this chapter.

These considerations lead unavoidably to the conclusion that it was intended that the safe-keeping and disbursement of the school fund in cities having charge of the public schools, should be secured by a special bond. The officer is not trusted upon the faith or responsibility of the general bond. Construing together the laws requiring the two bonds, it seems to us clear .that the sureties on the general bond cannot be made liable for a defalcation in the special fund. Henderson v. Coover, 4 Nev., 429; State v. Bradshaw, 10 Iredell's Law, (N. C.) 229; Brandt on Suretyship, etc.. sec. 473.

The view taken by the court below that the reports of the officer were *prima facie*, and not conclusive evidence against the sureties, is sustained by the weight of authority, and is believed to be supported by the better reason. See note to Boone County v. Jones, 37 Am. Rep., 234, where cases are collated; Wharton on Ev., sec. 22.

The case was tried below without a jury, but the findings of fact do not distinguish the funds in the deficit, and are not adapted to a final disposition of the case on this appeal on the defendant's liability as held in this opinion.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered April 23. 1886.]