THE TRUSTEES OF THE VILLAGE OF BATH, Appellant, *v.* DANIEL J. MCBRIDE et al., Respondents.

Public officers — bonds given by official having custody of village funds — liability upon general bond not affected by fact that another bond was given for the specific fund for the loss of which recovery is sought.

1. Where the legislature requires an officer to perform a special duty and to give a special bond for the performance of that duty, no liability may attach to the general bondsmen in the absence of a declaration that they shall be liable. But that rule does not apply where a fund is placed in the hands of a treasurer for safe keeping and disbursement without any direction that a special bond be executed for the security of that fund. To relieve them there must be some intention expressed by the legislature to that effect.

2. The trustees of a village fixed the amount for which its

treasurer should give bonds. He gave two separate bonds making up that amount. The bond upon which this suit was brought is in the precise language required by the charter of the village (L. 1895, ch. 785, tit. 2, § 11). and by a resolution adopted by its board of trustees. It purports to insure the village against any loss because of the default of its treasurer and it should be enforced in the terms in which it was written. The liability thereon is not affected by the fact that the treasurer gave another bond for the specific fund, for the loss of which recovery is sought in this action. *(Village of Bath* v. *McBride,* 219 N. Y. 92, followed.)

*Village of Bath* v. *McBride,* 163 App. Div. 714, reversed.

(Argued May 17, 1917; decided July 11, 1917.)

APPEAL from a judgment, entered August 22, 1914, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Fred A. Robbins* and *James McCall* for appellant. The bond in question is in exact conformity with the requirements of the village charter. (L. 1895, ch. 789, § 11; *Board of Supervisors* v. *Otis,* 62 N. Y. 88; *York* v. *Goldman,* 125 N. Y. 395; *Board of Education* v. *Fonda,* 77 N. Y. 350; *Board of Education* v. *Quick,* 99 N. Y. 138.) The language of the bond signed by Peck is plain and free from ambiguity and cannot be qualified, nor can defendant's liability be limited by the alleged representations of Hallock as to the effect or meaning of the bond. *(Bonnette* v. *Molloy,* 209 N. Y. 167; *McShane Co.* v. *Padian,* 142 N. Y. 207; *Allen* v. *City of Oneida,* 210 N. Y. 496; *Lossing* v. *Cushman,* 195 N. Y. 386; *De Remer* v. *Brown,* 165 N. Y. 410; *Fox* v. *Manchester,* 183 N. Y. 141; *Riley* v. *Mayor,* 96 N. Y. 331; *Cortland Co.* v. *Herkimer Co.,* 44 N. Y. 22; *City of N. Y.* v. *N. Y. C. Ry. Co.,* 126

App. Div. 36; 193 N. Y. 680; *Clapper* v. *Waterford*, 131 N. Y. 382.)   The bond of the defendants held them liable for all moneys or other property which came into the treasurer's hands.   Therefore, the defendants are liable in this action to the extent of penalty in the bond.   (*People* v. *Vilas*, 36 N. Y. 459; *Board of Education* v. *Quick*, 99 N. Y. 139; *Smith* v. *Mollison*, 148 N. Y. 241; *People* v. *Lee*, 104 N. Y. 442; *Schoellkopf* v. *Coatsworth*, 166 N. Y. 77; *Moore* v. *V. F. Ins. Co.*, 28 Gratt. 508; *Harrington* v. *Smith*, 28 Wis. 43; *Olson* v. *State Bank*, 57 Minn. 552; *Murray* v. *Spencer*, 24 Md. 520; *Henry* v. *Henry*, 11 Ind. 236.)

*H. V. Pratt* for George W. Peck, respondent.   The defendant George W. Peck is not liable for the loss of the "village hall fund."   (*Peabody* v. *Speyers*, 56 N. Y. 230; *Peck* v. *Vandemark*, 99 N. Y. 29; *Coe* v. *Tough*, 116 N. Y. 273; *Sonneborn* v. *Libbey*, 102 N. Y. 539; *Barney* v. *Forbes*, 118 N. Y. 580; *Elmendorf* v. *Lansing*, 2 Cow. 468; *Kurtz* v. *Forquer*, 94 Cal. 91; *Tolman & Co.* v. *Rice*, 144 Ill. 382; *Bartlett* v. *Wheeler*, 195 Ill. 445; *People* v. *Clough*, 63 Pac. Rep. 1066.)

*James O. Sebring* for Daniel J. McBride, respondent.

ANDREWS, J.   We must reverse the judgment of the Appellate Division and reinstate that of the trial court upon the authority of *Trustees, Vil. of Bath* v. *McBride* (219 N. Y. 92), unless the record contains such exceptions as would require a new trial or unless the action of the court below may be affirmed upon some theory not adopted by it.

We have discovered no exceptions that need discussion and none have been called to our attention.   We turn, therefore, to the substantial question involved in this appeal.

The plaintiff is a municipal corporation.   On March 6, 1912, the defendant McBride became its treasurer and

received as such $24,987.95 deposited with a banking firm. This sum was carried in different accounts such as the electric fund, the water works fund, the village hall fund and others. The village hall fund contained $23,397.18 and was the result of the sale of the bonds of the village issued for the purpose of constructing a village hall. The other funds were raised by taxation for general village purposes.

At a meeting of the trustees of the village on March 19th, 1912, a resolution was adopted requiring its treasurer to give bonds in the aggregate sum of $25,000 for the faithful performance of the duties of his office.

On April 2d, 1912, McBride, with the defendant Peck and with one Hallock as sureties, executed and delivered to the village the bond upon which this action is brought. It contained the condition required by the resolution.

On the same day McBride, with one Sutton and Hallock as sureties, executed and delivered to the village a bond in the penal sum of $15,000. This bond recited that, whereas McBride as treasurer will receive moneys raised for the purpose of building a village hall, and whereas the trustees have fixed the amount of said treasurer's bond for this purpose at the sum of $15,000, it is conditioned for the faithful performance by the treasurer of his duties with respect to the village hall fund.

On April 2d the trustees passed a resolution approving the bond of .the defendant McBride, "Village treasurer of the Village Hall Fund in the sum of $15,000;" and on April 16th approved the bond of McBride "As treasurer of the village funds in the sum of $10,000."

On May 31st, 1912, the bank in which these various sums were deposited failed. At this time there was a credit to the village hall fund of $21,840.29. With regard to the other funds, some showed a deficit and some a small credit balance, but the deficit exceeded the balance by over $200.

Under these circumstances it is claimed that the defendant Peck is not liable for the loss of the village hall fund;

that the bond which he signed as surety was applicable only to the general fund of the village; that the village hall fund was provided for by a bond of its own and so excluded the idea that the bond in this action had any reference thereto.

We cannot agree with this contention.

The bonds, the sale of which created the village hall fund, were apparently issued under the authority of section 128 of the Village Law. (Cons. Laws, ch. 64.) The sum represented by them was borrowed by the plaintiff and paid to it. It actually came into the hands of the village treasurer and was properly kept by him in a separate fund, as provided by section 101 of the same law. When all charges for the erection of the village hall had been paid the surplus, if any, would have been deposited in the general village fund.

Under the charter of the village of Bath, title 4, section 6 of chapter 785 of the Laws of 1895, the treasurer of the village was directed to receive all moneys belonging to it. Under section 11 of title 2 of the same act the treasurer, before entering upon the duties of his office, was required to execute and file with the village clerk a bond in such sum and with such sureties as the board of trustees shall approve conditioned that he will faithfully execute the duties of his office and account for and pay over all moneys received by him.

As we have seen, the trustees fixed the amount for which he should give bonds at $25,000, and the treasurer did give bonds for that amount. The bond upon which this suit was brought is in the precise language required by the statute and by this resolution. Its condition is that McBride "shall faithfully execute the duties of his said office and properly account for and turn over all moneys or other properties of said village received by him." The words are clear. The fund in question comes within this definition. The trustees had no authority to take any other or different bond.

Whether or not the $15,000 bond issued by Sutton as surety is in the language required by statute — whether or not, in spite of its limitation to the village hall fund it should be interpreted as a general bond, is immaterial here. The bond in this action is in proper form. It purports to insure the village against any loss because of the default of its treasurer and it should be enforced in the terms in which it is written.

Why the trustees in their resolution fixing the amount of security used the word "bonds" instead of "bond" — why they approved the form of the Sutton bond is also immaterial. We can hardly assume they intended to secure a fund of over $23,000 by a bond of $15,000. But in any event it is not their intent which we have to determine but the intent of the legislature.

It is perfectly true that where the legislature requires an officer to perform a special duty and to give a special bond for the performance of that duty, no liability may attach to the general bondsmen in the absence of a declaration that they shall be liable. Such was the case of *Board of Supervisors* v. *Ehlers* (45 Wis. 281) cited by the respondents. But that rule does not apply where, as in this case, a fund is placed in the hands of the treasurer for safe keeping and disbursement without any direction that a special bond be executed for the security of that fund. To relieve them there must be some intention expressed by the legislature to that effect.

We are, therefore, of the opinion that the judgment of the Appellate Division should be reversed and that of the trial court reinstated, with costs.

HISCOCK, Ch. J., CHASE, COLLIN, HOGAN, POUND and CRANE, JJ., concur.

Judgment reversed, etc.