**SPESSARD L. HOLLAND, as Governor of the State of Florida, for the use and benefit of the State of Florida, and County of Hendry, v. AMERICAN SURETY COMPANY of New York, a corporation.**

6 So. (2nd) 280 En Banc
January 16, 1942 Rehearing Denied March 3, 1942

J. Tom Watson, Attorney General, and E. Albert Pallot, Assistant Attorney General, for Plaintiff in Error.

Stuart MacKenzie, for Defendant in Error.

TERRELL, J.:

Defendant in error was surety on the bond of the tax collector of Hendry County who defaulted in the sum of $8,575.77. Plaintiff in error brought this action on behalf of the State and County to recover the defalcation. In his eleventh plea to the declaration, defendant in error, who was defendant below, alleged that $7,110.20 of the default was collected for license plates and titles distributed by the tax collector pursuant to Section 1218, Compiled General Laws of 1927, that the tax collector was required to account for said

funds to the motor vehicle commissioner of the State to whom he executed another bond in the sum of $1000 for the faithful performance of his duty and that such being the case, he was not bound on his general bond for this amount.

A demurrer to the eleventh plea was overruled and final judgment was entered for the plaintiff in the sum of $1,465.57, instead of $8,575.77, the amount claimed. The trial court took the position that the tax collector was not liable on his general bond for the default as to license plates but was liable only on his special bond to the motor vehicle commissioner. Writ of error was prosecuted to the final judgment.

The question presented is whether or not the general bond of the tax collector was liable for the full amount of the default or was liability as to the amount collected on license plates limited to his special bond given to the motor vehicle commissioner.

The general bond was in the sum of $10,000 conditioned to diligently and "faithfully perform all the duties of his office by the faithful collection of taxes, both State and county and the prompt payment thereof to the State and county treasurers as prescribed by law." The special bond was in the sum of $1000, payable to the motor vehicle commissioner conditioned upon the faithful performance of his duties as required by Section 1281, Compiled General Laws of 1927.

Sections 2416 and 2417, Compiled General Laws of 1927, govern the bond of the tax collector and are as follows:

"2416. Each of the county officers of whom a bond is or shall be required by law, shall, before he is commissioned, give bond, with not less than two securities,

or a surety company as hereinafter specified, to the Governor of the State of Florida and his successors in office, conditioned for the faithful performance of the duties of his office."

"2417. The tax collector of each county shall give bond in a sum to be fixed by the board of county commissioners of the respective county, subject to the approval of the Comptroller, as to amount and surety. In fixing said bond the board of county commissioners shall take into consideration the amount of money likely to be in the custody of the collector at any one time."

Section 1281, Compiled General Laws of 1927, govern the bond and duties of the tax collector as distributor of license plates and is as follows:

"The tax collector in the several counties of the State of Florida shall deliver license plates to applicants subject to the requirements of law and in accordance with rules and regulations to be prescribed with reference thereto by the State Motor Vehicle Commissioner. Each tax collector shall be required to give a good and sufficient surety bond payable to the State Motor Vehicle Commissioner and his successors in office conditioned that he will faithfully and truly perform the duties imposed upon him according to the requirements of law and the rules and regulations of the State Motor Vehicle Commissioner, and that he will well and truly pay over and account for all license plates, records and other property, and money which may come into his possession or control by reason of such service. The amount of such bond shall be fixed by the State Motor Vehicle Commissioner and shall be in proportion to the amount of accountability which is likely to arise in such capacity, the said

amount to be fixed by the State Motor Vehicle Commissioner."

Construing Sections 2416 and 2417 together, there can be no escape from the conclusion that the law binds the tax collector and his sureties generally for the faithful performance of his duties as such which includes any duty that may be subsequently imposed on him by law that is germane to or of a similar kind and within the reasonable contemplation of the parties. If the duties bear some relation to or are connected with the office and are not disconnected from or foreign to it, that is sufficient. National Surety Company v. United States, 129 Fed. 70, 22 R.C.L. 503, paragraph 186.

In Lafayette County v. Winburn, 81 Fla. 756, 88 So. 918, this Court construed a bond conditioned as the one involved in this case to be sufficient to secure filing fees collected from candidates in a primary election and paid to the clerk of the circuit court under a statute enacted subsequent to the giving of the bond.

The distribution of license plates and collection of charges therefor is not foreign to the duties of the office of tax collector. If he were secretary of his lodge or treasurer of some private corporation and defaulted, his bond as tax collector would not be liable because such would be foreign to and have no connection with that office.

Taking the face of the bonds literally without any relation to the law governing them, a different interpretation would not be unreasonable but the bond or bonds of a public official should be construed to accomplish what the law requires of it. In this case, the law requires a bond for the "faithful performance of the duties of his office." He gave a bond in the sum

of ten thousand dollars for that purpose. His duties as distributor of license plates is germane to his duty as tax collector; the fund he handled was just as sacred as taxes collected and since a very nominal bond was required for this, it may be that the motor vehicle commissioner considered him liable on his general bond and did not require a bond in proportion to his accountability.

In fine, we are confronted with three provisions of law for a bond, one general and two special or relating to particular duties. We think the ten thousand dollar bond was for the faithful performance of official duty which included that of distributing license plates. Even if the statute and the bonds taken together are susceptible of two interpretations, if given to protect public funds, that interpretation should be adopted which will preserve the fund. Not only that but any doubt as to interpretation should be so resolved.

In this holding, we do not overlook the doctrine that the liability of sureties on an official bond is limited by the terms of the bond and cannot be extended beyond its reasonable and necessary import but that doctrine is also limited by the terms of the law prescribing the bond and the law is as much a part of the bond as if written into it. When the law and the bond in this case are construed together, there is ample basis to protect the fund in question.

Holding this view, it follows that the judgment below must be and is hereby reversed.

Reversed.

WHITFIELD, CHAPMAN, and ADAMS, JJ., concur.

BROWN, C. J., BUFORD, and THOMAS, JJ., dissent.

BUFORD, J., dissenting:

Writ of error brings for review judgment as follows:

"This cause coming on to be heard upon defendant's motion for better bill of particulars and motion to strike an item in plaintiff's bill of particulars, and plaintiff's motion to strike pleas numbered 1 to 10 both inclusive and demurrer of plaintiff to plea numbered 11, and the same having been argued by counsel for the respective parties and considered by the Court:

"It Is Therefore Ordered and Adjudged that the defendant's motion for a better bill of particulars and the defendant's motion to strike an item in plaintiff's bill of particulars, and the plaintiff's motion to strike pleas numbered 1 to 10 both inclusive, and the demurrer of plaintiff to defendant's plea numbered 11, be and the same are and each one is overruled and denied.

"Whereupon the defendant asked leave in open court to withdraw its said pleas numbered 1 to 10 both inclusive and admit its liability for $1,465.57, and pay that amount into the registry of the court.

"Whereupon, the plaintiff stated that the 11th plea, in his opinion, was bad, but that he could not amend his declaration to meet the allegations of defendant's special plea numbered 11, and would therefore question the sufficiency of the said 11th plea in the Supreme Court.

"It Is Thereupon Further Ordered and Adjudged that leave be and the same is hereby granted to the defendant to withdraw said pleas numbered 1 to 10 both inclusive, admit its liability for said item of $1,465.57, and pay said sum of, to-wit: $1,465.57 in to the registry of this Court. And the defendant having withdrawn said pleas numbered 1 to 10 both inclusive in pursuance of the leave heretofore granted by the Court

and tendered in to the registry of this Court the sum of $1,465.57 in full settlement and discharge of its liability upon the bond sued upon in this cause.

"Whereupon the Court enters final judgment for the plaintiff Fred P. Cone, as Governor of the State of Florida, for the use and benefit of the State of Florida and County of Hendry, against the defendant, American Surety Company of New York, a corporation, for the sum of $1,465.57, which said sum has heretofore been tendered into the registry of this Court and the Clerk of said Court is hereby ordered and directed to pay the same to the plaintiff or its attorneys of record.

"Done and Ordered in Chambers this the 10th day of Dec. A.D. 1940."

Plea numbered 11 referred to in the judgment was as follows:

"11. The defendant denies that its said bond was breached by its said principal, Frank A. Daugherty as Tax Collector of Hendry County by his failure to remit or account as required by law for the item in the Bill of Particulars herein filed or 'Collected for license tags and titles $7,110.20,' for that said item is for automobile license tags and titles which were distributed through the office of its said Principal, Frank A. Daugherty, as Tax Collector of Hendry County, Florida, as required by Section 1281 Compiled General Laws of the State of Florida; that for this service additional compensation was allowed to its said principal as provided in said section and that its said principal was required to pay over and account for funds coming into his hands by reason of such service imposed upon him, to the Motor Vehicle Commissioner of the State of Florida and not to the Treasurer of the State of Florida, as in said declaration alleged; that its said

principal was required by said section and did give to the said Motor Vehicle Commissioner, a bond for the faithful performance of the duties imposed upon him in the distribution of license plates and the issuance of licenses as by said section required; and defendant avers that its said principal procured and delivered to the said Motor Vehicle Commissioner of the State of Florida a surety bond in the sum of $1,000.00 conditioned upon the faithful performance of his duties as required by said Section 1281 C.G.L.; that the United States Fidelity & Guaranty Co. was surety upon said bond and said surety company has paid the penalty thereof to the said Motor Vehicle Commissioner; that the alleged default, if any, of its said principal, arising through the failure to faithfully perform the duties imposed upon him by said Section 1281 C.G.L., is not a liability of this defendant as surety upon the bond of its principal, Frank A. Daugherty as Tax Collector of Hendry County, Florida."

The sole question before us is the sufficiency of the plea, supra. Frank A. Daugherty was Tax Collector of Hendry County, Florida, and, as such posted his bond in the sum of $10,000.00 conditioned as follows:

"The Condition of the Above Obligation is Such that, whereas the above bounden was on the third day of November, A.D. 1936, elected Tax Collector in and for the said County of Hendry to hold his office for a term of four years from the first Tuesday after the first Monday in January, A. D. 1937, and until his successor is qualified according to the Constitution and laws of said State. Now if the said Frank A. Daugherty shall be so commissioned, and shall diligently and faithfully perform all the duties of his office, by the faithful collection of taxes, both State and County,

and the prompt payment thereof to the State and County Treasurer, as prescribed by law, this obligation to be void, otherwise to remain in full force and virtue."

The bond was executed on the 15th day of December, 1936, with American Surety Company of New York as surety. The legislature of 1933 enacted Chapter 16085 wherein, amongst other things, it was provided:

"The Tax Collectors in the several counties of the State of Florida shall deliver license plates to applicants subject to the requirements of law and in accordance with rules and regulations to be prescribed with reference thereto by the State Motor Vehicle Commissioner. Each Tax Collector shall be required to give a good and sufficient surety bond payable to the State Motor Vehicle Commissioner and his successors in office conditioned that he will faithfully and truly perform the duties imposed upon him according to the requirements of law and the rules and regulations of the State Motor Vehicle Commissioner, and that he will well and truly pay over and account for all license plates, records and other property and money which may come into his possession or control by reason of such service. The amount of such bond shall be fixed by the State Motor Vehicle Commissioner and shall be in proportion to the amount of accountability which is likely to arise in such capacity, the said amount to be fixed by the State Motor Vehicle Commissioner."

The $10,000.00 bond above referred to was given under the provisions of Chapter 10033, Acts of 1925, amending Section 1569 of Revised General Statutes of Florida, which provides as follows:

"The Tax Collector of each County shall give bond in a sum to be fixed by the Board of County Commissioners of the respective county, subject to the approval of the Comptroller as to amount and surety. In fixing said bond the Board of County Commissioners shall take into consideration the amount of money likely to be in the custody of the Collector at any one time."

So it appears from the record that the Tax Collector posted his surety bond with American Surety Company as surety to comply with the provisions of Chapter 10033, supra, and that he posted his bond in the sum of $1000.00 with United States Fidelity & Guaranty Company as surety thereon to comply with the provisions of Chapter 16085, Acts of 1933. The bill of particulars furnished by order of the Court and by which the plaintiff was bound, shows the following:

"Amounts Collected by Frank A. Daugherty while Tax Collector of Hendry County and Unremitted, Since January 5, 1937:

| | |
|---|---:|
| Collected for State of Florida for taxes and licenses | $ 168.06 |
| Collected for Special School Districts for maintenance | 271.60 |
| Collected for Special School Districts for I & S | 411.23 |
| Collected for Everglades Drainage District | 10.77 |
| Collected for South Florida Conservancy District | 2.25 |
| Collected for Clewiston Drainage District | 46.60 |
| Collected for Hendry County for taxes and licenses | 1033.81 |

Collected for license tags and titles ................. 7110.20

       Total collected and unremitted ...........$9054.52

"Credits:

Paid by Daugherty since audits $   87.08

Commissions belonging to Daugh-
    erty now in clerk's hands ....   356.12

Check of J. H. Booth which was
    cashed _____     4.27

Cash turned over to clerk by
    Auditor when audits made   31.28

Amount paid by United States
    Fidelity & Guaranty Co. on
    Liability Bond _____ 1000.00   $1478.75

        Total due _____        $7575.77"

This bill of particulars shows that the total collections on account of money derived from license tags and titles was $9054.52, while the total amount of taxes and money derived from sale of license tags and titles was $7,110.20. It shows that of this amount $478.75 had been accounted for and $1,000.00 had been paid by United States Fidelity & Guaranty Company on liability bond, which left a balance of $7,575.77 total shortage, or a shortage of $6,110.20 of moneys derived from license tags and titles and a shortage of $1465.57 of moneys derived from tax collections.

It is the contention of the plaintiff in error that the surety of the bond executed December 15, 1936, is liable for the defalcation of Daugherty of the funds coming into his hands from the sale of license tags and titles, while the lower court held that the bond did not cover that item.

As a general rule, the law is as stated by us in the case of Catts as Governor for the use of Lafayette County v. Winburn, 81 Fla. 756, 88 Sou. 918. There we held:

"The law in force at the time of the execution of an official bond, giving it a certain legal effect, is part of the bond and the sureties are considered as having known the law and as having made their engagements in reference thereto. Therefore, if after an officer has been elected, given bond and assumed the duties of the office a statute is enacted imposing on him new and additional duties of collecting and accounting for public funds, and such duties are not considered germane to his original office, the sureties on his official bond are not liable for the non-performance by him of the new and additional duties thus imposed. Yet official bonds cover not merely duties imposed by existing law, but duties belonging to and naturally connected with their office, imposed by subsequent laws, although the new duties should bear some relation to or connection with such office and not be disconnected from and foreign thereto. The reason for this rule is that continued power of the legislature to change the duties of officers is known to the officer and his sureties; and the officer accepts the office and the sureties execute the bond, with this knowledge. Hence, a bond conditioned for the discharge of the duties of the office should in like manner be understood, not as restricted to duties as then prescribed by law, but as embracing the duties of the office as from time to time fixed and regulated by the legislature. Accordingly, it has been held that the sureties of an officer are liable for moneys received by him under an Act passed subse-

quently to the execution of their bond. 22 R.C.L., Sec. 186."

We cannot agree that the contention of plaintiff in error comes within the purview of the enunciation in that case. The duties of the tax collector in regard to the distribution of automobile license plates by the 1933 Act, supra, are not such duties as are germane to his original office. They are duties which the legislature may place upon any administrative officer of the county or State. In fact, the legislature has placed the same duties upon the county judge in some counties, (see Chapter 17116, Acts of 1935), and has placed the same duties on the supervisor of registration in other counties (see Chapter 17398, Acts of 1935).

The provisions of the quoted part of Sec. 1 of Chapter 16085, Acts of 1933, it appears to us, show conclusively that the liability for the correct accounting for funds received from the sale of license plates and titles was intended to be protected by a separate and independent bond and not by the general bond required as tax collector. This special bond was required to be made to the State Motor Vehicle Commissioner and his successors in office and to be conditioned that the maker of the bond will faithfully and truly perform the duties imposed upon him according to the requirements of law and the rules and regulations of the State Motor Vehicle Commissioner and that he will well and truly pay over and account for all license plates, records and other property and money which may come into his possession or control by reason of such service.

The statute further provided that the amount of the bond should be fixed by the State Motor Vehicle Commissioner and shall be in proportion to the amount of

accountability which is likely to arise in such capacity. The determination of the amount to be fixed was left in the discretion of the State Motor Vehicle Commissioner.

The conditions of the general bond sued on in this case are hereinabove quoted.

Section 1568 R.G.S., 2416 C.G.L., provides as follows:

"Each of the county officers of whom a bond is or shall be required by law, shall, before he is commissioned, give bond, with not less than two securities, or a surety company as hereinafter specified, to the Governor of the State of Florida and his successors in office, conditioned for the faithful performance of the duties of his office, which shall be approved by the Board of County Commissioners and Comptroller, and be filed with the Secretary of State."

And Section 1569 R.G.S., as amended by Chapter 10033, Acts of 1925, being Section 2417 C.G.L., is above quoted.

So there is not the necessary relation or connection between the duties imposed under Chapter 16085, Acts of 1933, and the duties of collecting State and county taxes as tax collector to hold the general bond liable. The legislature appears to have recognized this condition and to have attempted to make ample provision for the protection of the particular fund which is here the bone of contention.

In the case of State for the use of Gore v. Montague, et al., 34 Fla. 32, 15 Sou. 589, we held:

"The liability of sureties upon the official bond of a collector of revenue is limited by the terms of the bond, and cannot be extended beyond the reasonably necessary import of the same.

"The condition of the bond sued upon is, that the principal, as collector of revenue, 'shall faithfully perform all the duties of his office by the faithful collection of all taxes, both State and county, and the prompt payment thereof to the State and county treasurers as prescribed by law.' *Held,* that a suit could not be maintained upon this bond against either the principal or sureties, for fees due a publisher for advertising sales of lands for taxes, which had come into the hands of the principal. Such withholding of the moneys of the publisher by the collector is an instance of official misconduct, but not a breach of the official bond."

And in the body of the opinion in that case it was said:

"The bond sued upon was made in pursuance of the statute then in force (Chapter 3557, Acts of 1885, page 3). It is not given to secure the performance generally of all of the official duties of the principal, but the manner in which he shall perform such official duties are distinctly pointed out, to-wit: shall faithfully and diligently perform all the duties of his office *by the faithful collection of all taxes, both State and county, and the prompt payment thereof to the State and county treasurers as prescribed by law.* The responsibilities of obligees upon an official bond of a collector must be gathered from the bond itself, and as to sureties upon such bond, the doctrine that sureties are favorites of a court of law prevails, and their liability must be shown upon a strict construction of the bond. Cooley on Taxation, page 712. Examining the bond in question, first as to the liability of the sureties, we ascertain that the extent of their engagement was that the principal should faithfully perform all the duties

of his said office by the faithful collection of all taxes, both State and county, and the prompt payment thereof to the State and county treasurers. The bond does not cover the whole range of official duties, but only the proper collection of and payment of the taxes. The bond says that the principal shall faithfully perform all the duties of his said office by the faithful collection, etc. The exact duties being specified, certainly the sureties cannot be held for the non-performance of other duties, the non-performance of which was not assumed by them. The doctrine of *expressio unius est exclusio alterius,* has application to the condition of an official bond. United States v. Cheesman, 3 Sawyer, 424. The sureties cannot be held liable for the failure of their principal to pay the advertising fees sued for to Mr. Mahlon Gore, or to the State or county treasurer, unless those advertising fees can be called taxes which should have been paid over to the State or county treasurer. A tax is defined to be a rate or sum of money assessed upon the person or property of a citizen by government for the use of the nation, State or municipality. Rapalje & Lawrence Law Dictionary, title Tax. Cooley defines taxes to be the enforced proportional contributions from persons and property, levied by the State by virtue of its sovereignty for the support of the government and for all public needs. Cooley on Taxation, page 1."

We think that the legal principles enunciated in the case of Trustees of Village of Bath v. McBride, et al., 121 N.Y. 231, 116 N.E. 980, 4 A.L.R. 1428, are applicable and should be followed here, the material difference in the two cases being that in the Bath case the Trustees of the Village of Bath required both a general and a special bond of the village treasurer. The gen-

eral bond was conditioned as authorized by the village charter to properly account for and turn over all moneys and properties of the village received by him. The general bond was the only bond authorized by the charter or other legislative Act. A special fund was received by the treasurer derived from the sale of bonds for the erection of a village hall. The trustees required the treasurer to execute a special bond to account for the building funds, which they executed, accepted and approved. These funds were deposited in a bank and the bank failed. The special bond was insufficient to cover the amount in bank. Suit was brought on the general bond. Suit was contested on the ground that there was a special bond to cover this fund and, therefore, the general bond was not liable. The Court of Appeals approved the principle contended for but reversed the appellate division on the ground that the special bond was not authorized in the charter, or by other legislative Act. The text of the opinion as it appears in 116 N.E. 980, says:

"It is perfectly true that where the legislature requires an officer to perform a special duty and to give a special bond for the performance of that duty, no liability may attach to the general bondsmen in the absence of a declaration that they shall be liable. Such was the case of Board of Supervisors v. Ehlers, 45 Wis. 281, cited by the respondents."

The annotator says in 4 A.L.R. 1431:

"It is generally held that, where a statute requires a public officer to give a special bond for the performance of a special duty, the sureties on the general bond are not liable for any failure of the officer in respect to his duties under the special bond, in the absence of an express declaration that they shall be so liable."

The following cases are cited in support of the text: Morrow v. Wood (1876), 56 Ala. 1; Briggs v. Manning (1906), 80 Ark. 304, 97 S.W. 289; Anderson v. Thompson (1873), 10 Bush, 132; State v. Young (1877), 23 Minn. 551; Redwood County v. Tower (1881), 28 Minn. 45, 8 N.W. 907; Swift County v. Knudson (1898), 71 Minn. 461, 74 N.W. 158; State v. Felton (1882), 59 Miss. 402; State use of Maries County v. Johnson (1874), 55 Mo. 90; Crumpler v. Governor (1826), 12 N.C. (1 Dev. L) 52; Governor v. Matlock (1827), 12 N.C. (1 Dev. L) 214; Broad v. Paris (1886), 66 Tex. 119, 18 S.W. 342; Kempner v. Galveston County (1889), 73 Tex. 216, 11 S.W. 188; Connor v. Zachry (1909), 54 Tex. Civ. App. 188, 115 S. W. 867, 117 S.W. 177; Board of Education v. Rader (1896), 42 W. Va. 178, 24 S.E. 680; Milwaukee County v. Ehlers (1878), 45 Wis. 281; Milwaukee County v. Pabst (1888), 70 Wis. 352, 35 N.W. 337.

In the case now before us the special bond was authorized and required by the legislature and it was intended that that bond, and it only, should be held as surety for the performance of those duties therein mentioned.

To like effect is the case of Road District No. 1 of Jackson Parish v. Fidelity & Deposit Co. of Maryland, et al., 195 La. 621, 197 Sou. 252, and cases there cited.

BROWN, C.J., and THOMAS, J.J., concur.